IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

NATHANAEL L. CAMPBELL                                        PLAINTIFF

V.                                    NO. 12-2008

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration          DEFENDANT

## <u>MEMORANDUM OPINION</u>

Plaintiff, Nathanael L. Campbell, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner), denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. <u>See</u> 42 U.S.C. § 405(g).

### I.      Procedural Background:

Plaintiff filed his current applications for DIB and SSI on April 30, 2010, alleging an inability to work since January 1, 2003,[1] due to learning disability, mental problems, depression, mood swings, and stomach problems. (Tr. 149-155, 156-159, 188, 192). An administrative hearing was held on April 6, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 35-86).

By written decision dated June 16, 2011, the ALJ found that during the relevant time

_____

[1]Plaintiff originally indicated his onset date was December 31, 1997. (Tr. 188). However, at the hearing held before the ALJ, the onset date was amended to January 1, 2003. (Tr. 40).

-1-

period, Plaintiff had an impairment or combination of impairments that were severe - borderline

intellectual functioning, somatoform disorder, personality disorder and a substance addiction

disorder. (Tr. 13). However, after reviewing all of the evidence presented, the ALJ determined

that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed

in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4. (Tr. 14). The

ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant is able to perform work where
> interpersonal contact is incidental to the work performed, the complexity
> of tasks is learned and performed by rote with few variables and little
> judgment, and the supervision required is simple, direct and concrete.

(Tr. 16). With the help of the vocational expert (VE), the ALJ determined that during the

relevant time period, Plaintiff could perform his past relevant work as a general laborer in a

brickyard and a landscaping worker. (Tr. 18).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on December 22, 2011. (Tr. 1-4). Subsequently, Plaintiff filed this action.

(Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5).

Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 12, 14).

The Court has reviewed the entire transcript. The complete set of facts and arguments

are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

-2-

AO72A
(Rev. 8/82)

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled

-3-

an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## III.   Discussion:

Plaintiff contends that the ALJ erred in concluding that Plaintiff was not disabled because: 1) the ALJ erred as to the RFC; 2) the ALJ erred as to credibility; and 3) the ALJ erred in concluding that Plaintiff could return to his past work.  (Doc. 11).

### A.   RFC Findings:

RFC is the most a person can do despite that person's limitations.   20 C.F.R. §404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "The ALJ is [also] required to set forth specifically a claimant's limitations and to

-4-

determine how those limitations affect his RFC." Id.

In the present case, the ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations. With respect to Plaintiff's alleged stomach impairment, the ALJ discussed Plaintiff's stomach issues, and also noted that Plaintiff reported he drank alcohol socially, smoked cigarettes, and had last smoked marijuana at the first of the year. (Tr. 16). He also noted that Plaintiff was taking no medications, performed household chores for his mother and had a girlfriend, spent time with family and took part in family barbeques, read, and watched television. (Tr. 16). The ALJ concluded that Plaintiff's physical complaints were "either non-severe or not medically determinable." (Tr. 17).

A General Physical Examination was conducted by Dr. Van Hoang on June 23, 2010, wherein he found all of Plaintiff's limb functions were normal and all range of motions were normal. (Tr. 277-279). He concluded Plaintiff had "very mild physical disability." (Tr. 280).

As to Plaintiff's alleged mental impairments, the ALJ addressed the evaluation given by Dr. Robert L. Spray, Jr., psychologist, on August 1, 2006. (Tr. 246-250). Dr. Spray concluded that Plaintiff's estimated IQ was 76 and diagnosed him with:

|  |  |
|---|---|
| Axis I: | Dysthymia |
| Axis II: | Borderline Intellectual Functioning. |

(Tr. 248). Dr. Spray noted that Plaintiff drank on weekends "till there ain't no more." (Tr. 247). Plaintiff reported that the last time he used marijuana was two months previously, and Dr. Spray noted that he had drug rehabilitation following prison. (Tr. 247). Plaintiff reported that he helped around the house by doing dishes, cutting the lawn, cleaning the bathroom, and doing the laundry. (Tr. 248). Dr. Spray found no marked limitations with Plaintiff's concentration,

-5-

persistence, or pace, and that Plaintiff's level of adaptive functioning was not consistent with a diagnosis of mental retardation. (Tr. 249). Plaintiff reported to Dr. Spray that he did not take his medication that day. (Tr. 250).

The ALJ also discussed the evaluations given by Kathleen M. Kralik, Ph.D., on August 29, 2007, and June 1, 2010. (Tr. 254-261, 268-274). In the 2007 evaluation, Dr. Kralik addressed Plaintiff's vomiting, noting that Plaintiff had surgery for a ruptured appendix when he was between the ages of 7 and 11, and was told he would have problems and become lactose intolerant. (Tr. 254). Dr. Kralik noted that Plaintiff reported vomiting at least twice daily, reportedly in association with consuming dairy products, when exposed to heat, when he drank coffee, and/or when eating a full meal. (Tr. 254). Neither Plaintiff nor his mother had spoken to a physician about his vomiting, and Dr. Kralik had the impression, from what Plaintiff described, that his belief that he would vomit may have as much to do with his symptoms as his old abdominal issues. (Tr. 254). Dr. Kralik reported that Plaintiff had previously taken Prozac, but did not like the way it made him feel. (Tr. 255).

Dr. Kralik reported that Plaintiff was not completely truthful initially regarding his legal history, and he indicated that when he needed money, he offered to mow the lawns of his mother or her girlfriend. He reported smoking ½ pack of cigarettes daily, consuming alcohol on weekends (6 or 12 pack in a sitting), and using marijuana 6 months previously. (Tr. 256). Dr. Kralik found that Plaintiff manifested no significant signs of either depression or any other form of distress, and that Plaintiff was blatantly exaggerating and making excuses about some issues, such as the minor physical ailments rendering him "imperfect" from a hiring standpoint. (Tr. 257). Dr. Kralik found Plaintiff was vague and "frankly quite deceptive" about his criminal

-6-

history - particularly the most recent felony for which he had numerous opportunities upon questioning in the course of the exam.  (Tr. 257).  She found no credible evidence was reported or observed by Plaintiff or his mother, suggestive of depression.  (Tr. 257).  She estimated Plaintiff functioned in the low average range of intelligence and reported that he seemed to be capable of higher cognitive functioning that he typically might manifest, "as he has apparently had a long pattern of playing on the sympathies of others when it suits his purposes."  (Tr. 257). She further reported that it was not doubted Plaintiff may manifest some academic deficits in association with a history of disruptions in school attendance and low academic motivation. "However, this has not impeded his ability to attain manual labor jobs in the past."  (Tr. 257). Dr. Kralik estimated his IQ to be greater than 80.  (Tr. 259).

Plaintiff confirmed to Dr. Kralik that if offered a regular job, he could do it despite whatever physical or mental allegations he made.  (Tr. 259).  She also found that as to his physical issues, he seemed highly likely to exaggerate his report of problems, symptoms, and their impact on his functionality.  (Tr. 259).  She concluded that neither Plaintiff's report nor his presentation supported an allegation of depression or even dysthymia.  (Tr. 259).  She believed malingering and/or factitious disorder would need to be ruled out.  (Tr. 259).  Dr. Kralik diagnosed Plaintiff as follows:

> Axis I:      Attention Deficit Hyperactivity Disorder; Combined Type
> (provisional)
> Psychological factors affecting medical condition;
> including maladaptive health behaviors; e.g. deliberately
> eating foods he believes will without fail induce vomiting
> (Provisional; pending medical assessment-rule out
> malingering or factitious disorder)
> Cannabis abuse; allegedly intermittent (diagnosed here as
> a reflection of ongoing engagement in illegal activities

despite having a pending suspended sentence)
Alcohol Abuse; ongoing (despite alleged gastrointestinal issues/frequent vomiting)

Axis II:    Personality disorder not otherwise specified (with antisocial and dependent personality features, at minimum)

Axis V:     Estimated Current GAF:        51-60
            Estimated Highest GAF Past Year:   51-60
            Estimated Typical GAF Past Year:   51-60

(Tr. 259).  Dr. Kralik found that Plaintiff's capacity to carry out activities of daily living and daily adaptive functioning was estimated to be somewhat impaired for occupational purposes, noting that he seemed more disinclined that unable or even unwilling to act in a more age appropriate manner.  (Tr. 260).  She found that Plaintiff's capacity to communicate and interact in a socially adequate manner was estimated to be adequate for occupational purposes; that Plaintiff's capacity to communicate in an intelligible and effective manner was estimated to be generally adequate for occupational purposes; that his capacity to cope with the typical mental/cognitive demands of basic work-like tasks seemed adequate for occupational purposes; that Plaintiff neither reported nor manifested any credible evidence of either significant mental or cognitive issues; that Plaintiff's ability to attend and sustain concentration on basic tasks seemed somewhat impaired, but generally adequate for occupational purposes; that his capacity to sustain persistence in completing tasks seemed problematic, in that he tended to give up fairly readily on some tasks; that Plaintiff's capacity to complete work-like tasks within an acceptable time frame seemed problematic.  (Tr. 261).  Dr. Kralik believed that Plaintiff did not seem to put forth a consistent, adequate effort on the Mental Status Exam tasks.  She believed there seemed in Plaintiff's presentation no credible evidence in support of a serious mental illness and that

-8-

even if his vague allegations were taken at face value, Plaintiff acknowledged that he could work if offered a job he would deem to be suitable. (Tr. 261).

In Dr. Kralik's June 1, 2010 evaluation, she reported that Plaintiff smelled strongly of alcohol at the 8:00 am appointment. (Tr. 268). Plaintiff reported to Dr. Kralik that he thought his condition was basically the same since he was last denied disability benefits. (Tr. 268). Dr. Kralik reported that to feel able to do a job, Plaintiff thought it would require a job that did not require too much heavy lifting and that would allow him to sit and rest as needed. (Tr. 268). She reported that Plaintiff confirmed he was not telling the Social Security Administration that he could not work - rather that he needed to take frequent breaks while working. (Tr. 268). Plaintiff acknowledged he could do simple jobs that did not put too much strain on his mid-section-repeatedly making reference to the fact that he could not do sit-ups. (Tr. 268). Plaintiff reported he took no medications at that time. (Tr. 269). Dr. Kralik reported that he had not likely been very motivated to participate in treatment in the past or had seemed very distressed, much less motivated to change. (Tr. 269). Plaintiff reported that he worked odd jobs about 5 hours a week, and acknowledged he could work more hours if there was more work available. (Tr. 269). Plaintiff reported smoking ½ to 1 pack of cigarettes a day, and alleged he had alcohol the day before the evaluation "for Memorial Day." (Tr. 269). He reported that he used marijuana a few days previously. (Tr. 269). He smoked marijuana daily when he was living in Florida, and last used methamphetamine about 10 years previously. (Tr. 269).

Dr. Kralik estimated Plaintiff functioned in the low average range of intelligence and estimated IQ to be greater than 80. (Tr. 271-272). Dr. Kralik estimated more of a low average intellectual capacity than the measured borderline intellectual functioning obtained earlier. (Tr.

-9-

272).  She diagnosed Plaintiff as follows:

|  |  |
|---|---|
| Axis I: | Other Substance Abuse Disorder NOS (nicotine dependence ongoing, alcohol abuse - binge drinking pattern acknowledged, at minimum; cannabis abuse, allegedly ongoing and intermittent; methamphetamine abuse allegedly in full sustained remission. |
|  | Somatoform disorder not otherwise specified (with use of complaints of likely fairly normal physical discomfort to reduce expectations of self and others regarding his capacity to work - rule out malingering |
| Axis II: | Personality Disorder NOS (with primary antisocial, parasitic-dependent and associated narcissistic features; rule out borderline personality features) |
| Axis V: | Estimated Current GAF:       45-55 |
|  | Estimated Highest GAF Past Year - 50-60 |
|  | Estimated Typical GAF Past Year:    45-55 |

(Tr. 272).  Dr. Kralik concluded that Plaintiff's capacity to carry out activities of daily living and daily adaptive functioning was estimated to be adequate for occupational purposes.  (Tr. 273). She believed Plaintiff acted more like an adolescent and was likely only doing the minimum required of him.  (Tr. 273).  Dr. Kralik found that Plaintiff's capacity to communicate and interact in a socially adequate manner was estimated to be likely moderately intermittently impaired for occupational purposes, but generally adequate; that Plaintiff's capacity to communicate in an intelligible and effective manner was estimated to be generally adequate for occupational purposes; that Plaintiff's capacity to cope with the typical mental/cognitive demands of basic work-like tasks seemed adequate for occupational purposes; that Plaintiff's capacity to sustain persistence in completing tasks seemed problematic, but she believed Plaintiff was likely more unwilling than unable to keep up the pace, from what he reported and manifested.  (Tr. 273).  Dr. Kralik reported that nothing in Plaintiff's report of mental or cognitive issues would suggest the past denials were somehow in error - nor that there was any

-10-

reason he could not participate in gainful occupational endeavors despite the symptoms alleged if he so chose and saw it as essential that he do so.  (Tr. 273).

Dr. Winston Brown completed a Psychiatric Review Technique on June 24, 2010, wherein he found Plaintiff had a mild degree of limitation in restriction of activities of daily living; a moderate degree of limitation in difficulties in maintaining social functioning and concentration, persistence, or pace; and had no episodes of decompensation, each of extended duration. (Tr. 293).  Dr. Brown also completed a Mental RFC Assessment on June 24, 2010, and concluded that Plaintiff appeared capable of unskilled work both at the date of last insured and currently.  (Tr. 299).  This was affirmed as written on July 22, 2010.  (Tr. 332).

The ALJ gave the evaluations of Dr. Spray, Dr. Kralik, and Dr. Hoang significant weight, and the Court finds that based upon all of the relevant evidence in the record, there is substantial evidence to support the ALJ's RFC findings.

**B.**     **Credibility Findings:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir.

-11-

2003).

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to the extent they were inconsistent with his RFC assessment.  (Tr. 17).  He discussed the medical opinions, Plaintiff's daily activities, and the fact that he was able to mow yards, perform household chores for his mother and had a girlfriend, and spent time with family and took part in the family barbeques.  (Tr. 16). The ALJ also noted that Plaintiff was not taking any medication, and continued to drink alcohol and smoke cigarettes.  The Court also notes that the record reflects that Plaintiff was not always honest about his criminal record when being questioned by Dr. Kralik, which further undermines Plaintiff's credibility.

Additionally, Plaintiff's recent visits to the Western Arkansas Counseling and Guidance on April 8, 2011, April 26, 2011, and May 25, 2011 (Tr. 364-368, 373-374, 369-371) support the ALJ's findings.

The Court finds there is substantial evidence to support the ALJ's credibility findings.

**C.    Past Relevant Work:**

At the hearing, the VE testified that the general laborer position, brick and tile, although listed as heavy, unskilled, was probably performed at a medium level - "he said he picked up a brick at a time, it could even be at a light level."  (Tr. 79).  The hypothetical question posed to the VE was as follows:

> So if you have a hypothetical individual, same age, education, past work as Mr. Campbell, who has no exertional limitations per se, but from a non-exertional standpoint is limited to work where interpersonal contact is incidental to the work performed.  The complexity of tasks is learned, performed by rote with few variables, use of little judgment.  Supervision

-12-

required is simple, direct, and concrete.  Could such a hypothetical
individual perform the claimant's past work as a general laborer, brick?

(Tr. 80).  The VE responded in the affirmative.  (Tr. 80).  The VE also stated that the landscaping

job would still be intact.  (Tr. 80).  In his decision, the ALJ compared Plaintiff's RFC with the

physical and mental demands of the general laborer in a brickyard and as a landscape laborer,

and found that Plaintiff was able to perform it as he actually performed and as it is generally

performed in the national economy.  In addition, as urged by Defendant, the ALJ had the benefit

of Plaintiff's Work History Report.

The Court believes the hypothetical question the ALJ proposed to the VE fully set forth

the impairments which the ALJ accepted as true and which were supported by the record as a

whole.  See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  The Court further believes that

the VE's response to the hypothetical question constitutes substantial evidence supporting the

ALJ's conclusion that Plaintiff's impairments did not preclude him from performing his past

relevant work as a general laborer, brick and landscaper.  Pickney v. Chater, 96 F.3d 294, 296

(8th Cir. 1996)(testimony from VE based on properly phrased hypothetical question constitutes

substantial evidence).

## V.      Conclusion:

The Court finds there is substantial evidence to support the ALJ's decision and

accordingly, hereby affirms the ALJ's decision and dismisses Plaintiff's case with prejudice.

DATED this 26th day of December, 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-13-